In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-2314

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

EURAL BLACK,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:05-cr-00070-4 — **Ronald A. Guzmán**, *Judge.*

ARGUED MARCH 2, 2021 — DECIDED JUNE 4, 2021

Before RIPPLE, HAMILTON, and KIRSCH, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Appellant Eural Black is serving a forty-year sentence in federal prison for firearm, robbery, and drug offenses that he committed as a Chicago police officer. He moved the district court for compassionate release under 18 U.S.C. § 3852(c)(1)(A) based on his prostate cancer and the COVID-19 pandemic. The district court denied Black's motion. It concluded that Black had not shown "ex-

traordinary and compelling reasons," as defined by the Sentencing Commission's policy statements, to modify his sentence. The court also said that even if Black had made that showing, the sentencing factors under 18 U.S.C. § 3553(a) weighed against release because Black had served only one-third of his lengthy sentence for such serious crimes.

After the district court denied Black's motion, we decided *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), which held that the "extraordinary and compelling reasons" issue was, in the wake of the First Step Act of 2018, no longer governed by the Sentencing Commission's policy statements that the district court had relied upon here. The district court's alternative rationale—that the § 3553(a) factors weighed against release—is not a persuasive basis for treating the legal error as harmless. Two unusual features of this case persuade us that the district court needs to take a fresh look at how those factors apply to Black. We vacate the denial and remand for reassessment of both steps of the compassionate-release decision.

I.   *Factual and Procedural Background*

Defendant Eural Black was a corrupt Chicago police officer. He took part in a scheme to take the drugs and weapons that he found during police work, to have known dealers sell them, and to share in the profits. In 2007, a jury convicted Black of conspiracies to engage in racketeering, drug distribution, and robbery, as well as two counts of using and carrying a firearm in furtherance of a crime of violence. See 18 U.S.C. § 924(c) (2006). The district court sentenced Black to a total of forty years in prison. The court imposed concurrent ten-year terms in prison on the conspiracy convictions and consecutive terms totaling thirty more years for the gun charges—the

mandatory minimum for two such convictions at the time. Years later, in 2018 Congress passed the First Step Act, which lowered significantly the mandatory minimums for convictions under § 924(c). If he were sentenced today for the same convictions, Black's mandatory minimum sentence would be ten years.

In 2020, Black moved for compassionate release under 18 U.S.C. § 3852(c)(1)(A), which was also amended in the First Step Act to allow federal prisoners to seek release from a district court without the endorsement of the Bureau of Prisons, a requirement that had limited compassionate release cases to just a few dozen per year nationwide.

Black argued that his cancer and chemotherapy meant he faced an increased risk of severe illness and death from COVID-19. At the time of his motion, Black was being held at one of the federal correctional facilities in Butner, North Carolina, where the complex had nearly 650 active cases of the virus, and where one staff member and nineteen inmates had died. Black also contended that the sentencing factors under 18 U.S.C. § 3553(a) supported his release: He had no prior criminal history; specific deterrence was unnecessary because he was no longer a police officer and could not commit the same crimes again; and although he had served only one-third of his forty-year sentence, thirty years of that term were based on mandatory minimums that Congress had since reduced substantially.

The government opposed Black's motion. It agreed that his health presented an extraordinary and compelling reason that could legally support early release. The government argued, however, that the sentencing factors—the seriousness of Black's crimes and the need for just punishment given that

he had served only one-third of his sentence—weighed against it.

The district court denied the motion for two reasons. First, it disagreed with the parties that Black had established an extraordinary and compelling reason for release. Applying the Sentencing Commission's policy statement in Sentencing Guideline, U.S.S.G. § 1B1.13 Appl. Note 1, the court explained that Black had not shown that his cancer was terminal or chronic or that he was at risk of contracting COVID-19 and thus unable to care for himself in prison. The COVID data cited by the parties, the court noted, reflected the infection and death rates for the entire Butner facility, not at the Butner Federal Medical Center where Black was housed and which had few infections and no deaths. Second, even if Black had established a compelling reason for release, the district court said it would not modify his sentence because the § 3553(a) factors weighed against doing so. The court emphasized that Black had served only one-third of his forty-year sentence, so that compassionate release now would not promote respect for the law or provide just punishment. The court also noted that Black's crimes were "very serious" and that he was receiving medical care in prison.

II. *Analysis*

After Black appealed, he was transferred from the federal prison in North Carolina to a federal prison in West Virginia. That transfer did not render his motion moot. Black seeks release from any federal prison based on the risk of contracting COVID-19 because social distancing is impossible in prison. Even at a different federal prison, his case remains live, though changing circumstances may make it more or less persuasive. See *Lehn v. Holmes*, 364 F.3d 862, 871–72 (7th Cir.

2004) (prisoner's transfer to different facility did not render moot his request for injunctive relief against a system-wide policy).

On the merits, under 18 U.S.C. § 3582(c)(1)(A), after considering the § 3553(a) sentencing factors, a district court may grant a defendant's request to reduce his prison term if the reduction is supported by "extraordinary and compelling reasons" and consistent with any applicable Sentencing Commission's policy statement. We review denials of such motions for abuse of discretion, see *Gunn*, 980 F.3d at 1180, but a decision based on a mistake of law will be deemed an abuse of discretion. *Koon v. United States*, 518 U.S. 81, 100 (1996); *United States v. Guerrero*, 946 F.3d 983, 986 (7th Cir. 2020).

Black first contends that the district court erred by deciding that his cancer and susceptibility to COVID-19 did not amount to an extraordinary and compelling reason for release. Because prostate cancer and the treatment he receives for it are listed by the Centers for Disease Control and Prevention as risk factors for COVID-19, and because the government conceded that he had shown extraordinary circumstances, Black argues, the court should not have relied on U.S.S.G. § 1B1.13 and its Application Note 1 to find otherwise.

Because of a peculiar circumstance stemming from the Sentencing Commission's years-long lack of a quorum, we agree with Black that the district court made a legal error. Before the First Step Act took effect in 2018, § 3582(c) required an incarcerated person seeking compassionate release to obtain the endorsement of the Bureau of Prisons before seeking relief from a court. The statute also required that relief be "consistent with applicable policy statements issued by the Sentencing Commission." See *Gunn*, 980 F.3d at 1179–80.

Since enactment of the First Step Act, however, the Sentencing Commission has been unable to update its applicable policy statements because it has lacked a quorum. See, e.g., *United States v. Maumau*, 993 F.3d 821, 834–37 (10th Cir. 2021) (explaining this background in more detail).

In *Gunn*, we decided that under the First Step Act, the Commission's earlier and still unchanged policy statements, which were written to fit a quite different statute, are no longer "applicable" and no longer limit the availability of compassionate release. The pre-First Step Act language in § 1B1.13 and its Application Note 1 describe "extraordinary and compelling reasons" for granting motions for release in quite stringent terms. Those provisions apply to motions filed by the Bureau of Prisons, and they are not "applicable," to use the statutory term, to a motion filed by the inmate as permitted under the First Step Act. See *Gunn*, 980 F.3d at 1180. The district court was not bound by the parties' agreement that Black had shown extraordinary and compelling reasons, but the court had broader discretion than it realized to decide whether Black's condition was extraordinary and compelling. See *id.* (noting that district court's discretion may be guided, but is not curtailed, by U.S.S.G. § 1B1.13).

To be clear, the district court did not make a legal error by merely quoting and analyzing § 1B1.13. But there is quite understandably no indication in the court's order in this case that it recognized before our decision in *Gunn* that it had discretion to go beyond § 1B1.13 in deciding Black's motion. See *United States v. Cooper*, 996 F.3d 283, 287& n.4 (5th Cir. 2021) (noting that all seven circuits to have reached the question, including this circuit, have given same answer).

That much is now settled law in this circuit. The district court offered an alternative ground for denial, that the 18 U.S.C. § 3553(a) factors weigh against Black's release. That alternative ground could well be a sufficient basis for denying relief. E.g., *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). In this case, however, we believe that the district court needs to take a fresh look at this alternative ground. Its explanation was terse and did not signal that it took into account other statutory changes that do not mandate relief here but may well be relevant and could reasonably be deemed to alter the weight of those factors.

In evaluating the § 3553(a) factors, the district court relied principally on the fact that Black had served only thirteen years of his forty-year sentence. In most cases we would have little trouble accepting that sensible and legally permissible rationale. It supports a discretionary conclusion that just punishment and respect for the law require continued incarceration. In this case, however, it is clear that if Black were being sentenced for these same crimes today, his sentence could be substantially shorter.

The First Step Act, in addition to changing the compassionate release law, included § 403, which amended sentences under 18 U.S.C. § 924(c). Congress lowered the mandatory sentences for Black's firearm-related crimes if they were committed today. Compare 18 U.S.C. § 924(c) (2006) (mandating five-year minimum for first firearm offense under the statute and twenty-five-year minimum for the second) with *id.* (2018) (mandating five-year minimums for the first and second offense). If Black were sentenced today, he would face a mandatory minimum of ten years, not thirty years, for his firearm offenses. If, for the non-firearm charges, he received (as he

originally did) concurrent ten-year prison terms running consecutive to the firearm sentences, his total prison time might now be twenty years. Any such calculations involve speculation about how the court might have sentenced him (and even how he might have been charged) under a quite different set of sentencing provisions. But it is at least plausible that Black would have served closer to two-thirds or even more of his total sentence under those circumstances.

The government points out correctly that Congress did not make § 403 of the First Step Act retroactive. See *United States v. Sparkman*, 973 F.3d 771, 774 (7th Cir. 2020) (explaining that § 403 applies retroactively only in limited circumstances where firearm conviction occurred before the Act but sentence was imposed after the Act took effect). That feature of the First Step Act shows that the district court was not *required* to reduce Black's sentence based on these changes. Congress's policy choice not to make the changes to § 924(c) categorically retroactive does not imply that district courts may not consider those legislative changes when deciding individual motions for compassionate release like this one. To the contrary, the purpose of compassionate release under § 3582 is to allow for sentencing reductions when there is no statute affording such a reduction but where extraordinary and compelling reasons justify that relief. See *Maumau*, 993 F.3d at 837 (affirming grant of compassionate release for defendant originally sentenced to fifty-five years with stacked convictions under § 924(c) where district court considered § 3553(a) factors); *id*. at 838 (Tymkovich, C.J., concurring) (noting importance of discretionary, case-by-case consideration). As the Fourth Circuit explained in a similar case: "Not all defendants convicted under § 924(c) should receive new sentences, but courts should be empowered to relieve some defendants of those

sentences on a case by case basis." *United States v. McCoy*, 981 F.3d 271, 287 (4th Cir. 2020) (affirming compassionate releases for several defendants originally sentenced with "stacked" § 924(c) convictions). Other circuits have agreed. See *United States v. Owens*, 996 F.3d 755, 760–63 (6th Cir. 2021); *United States v. Cooper*, 996 F.3d at 288–89 & n.5 (5th Cir.); see also *United States v. Rollins*, No. 99-CR-771-1, 2021 WL 1020998 (N.D. Ill. 2021) (after remand, exercising discretion to modify extraordinarily long sentence that had been based on later-amended consecutive sentences under § 924(c)). We agree that such discretion is inherent in the compassionate release statute and process.

Because the district court did not consider this statutory change, which reflects a substantially different view by Congress about how to punish violations of § 924(c), we are not convinced the district court recognized the full extent of its discretion when it decided Black's motion, particularly when this rationale was offered as an alternative ground after the court had erroneously held that Black was not even legally eligible for relief under § 3582(c). In discussing the § 3553(a) factors, the court mentioned only two factors. First, it called Black's crimes "very serious." We agree that they were. Upon remand, the district court might well decide that the sentences should not be reduced. Denial would not be required, though. The court also mentioned that Black was receiving medical care in prison. That factor is of course relevant in deciding how pressing the medical reasons for release might be, but it does not independently support continued confinement. Black's treatment—chemotherapy for his prostate cancer—was precisely what made him more vulnerable to COVID-19 and thus was the basis of his request for relief.

VACATED AND REMANDED.

KIRSCH, *Circuit Judge*, dissenting. Eural Black was a dirty cop and part of a drug-dealing enterprise: "The drug dealers in the enterprise provided the corrupt Chicago cops with information about the location of narcotics and money held by other drug dealers. The corrupt officers used that information to conduct traffic stops and home invasions and seize drugs and money they found. The cops then sold the drugs with the help of the drug dealers, and the coconspirators divided the proceeds." *United States v. Haynes*, 582 F.3d 686, 692–93 (7th Cir.), *amended on denial of reh'g*, 353 F. App'x 58 (7th Cir. 2009). I agree with the district court and the majority: "very serious" crimes. Black was sentenced to 40 years in prison. He is 56 years old, and his expected release date is May 29, 2041. He seeks a nearly 20-year reduction of his sentence.

Under 18 U.S.C. § 3582(c)(1)(A), a district court may reduce a prisoner's sentence if extraordinary and compelling circumstances warrant a reduced sentence and the 18 U.S.C. § 3553(a) factors favor early release. If the district court finds that either requirement weighs against a reduction in sentence, the court may deny relief without addressing the other requirement. *See, e.g.*, *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). The burden is on the prisoner to demonstrate that a reduction in sentence is warranted. *See United States v. Melgarejo*, 830 F. App'x 776, 778 (7th Cir. 2020). Because I would hold that the district court did not abuse its discretion when it decided that the § 3553(a) factors do not favor early release, I respectfully dissent.

The district court's analysis under § 3553(a), though brief, was reasonable. *See United States v. Burnley*, 834 F. App'x 270, 272 (7th Cir. 2021) (holding under the abuse of discretion standard, the district court's "reasoning process" must be

"reasonable"). We recently emphasized that a district court need not include "a detailed, written explanation analyzing every § 3553(a) factor;" rather, all that we require is "some statement of reasons" to allow for meaningful review. *United States v. Sanders*, 992 F.3d 583, 588 (7th Cir. 2021) (quotation omitted). That is what the district court provided here. The court concluded, among other things, that Black had "served only about one-third of his forty-year sentence," that his crimes were "very serious," that a sentence reduction would not "promote respect for the law, afford adequate deterrence, or provide just punishment for his offenses [which included several 18 U.S.C. § 924(c) violations]," that "[c]ontinued incarceration is appropriate and necessary," and that Black was receiving "substantial [medical] care" in prison. R. 730 at 3. The court thus considered the nature and circumstances of the offense and characteristics of the defendant (§ 3553(a)(1)); the need for the sentence imposed to promote respect for the law, to provide just punishment for Black's offenses, and to afford adequate deterrence to criminal conduct (§ 3553(a)(2)(A) & (B));[1] and the adequacy of Black's medical care in prison (§ 3553(a)(2)(D)). The majority neither identifies a § 3553(a) factor that should have been considered but was not, nor finds error in the district court's reasoning concerning the factors that it addressed. I would affirm.

The majority faults the district court for failing to consider Black's sentencing disparity argument—that if he were

---

[1] The district court was correct to ignore Black's frivolous specific deterrence argument that he could no longer commit the same crime because he was no longer a police officer. Black was a drug dealer. Maybe he would not have the same manner and means to commit his crimes if he was released early, but hardly would any other criminal.

sentenced today, his § 924(c) convictions would carry lower mandatory minimum sentences due to § 403 of the First Step Act, possibly leading to a lower sentence.[2] The majority acknowledges that the First Step Act's § 924(c) sentencing reforms do not apply retroactively to Black, who was sentenced before the law was passed. Nonetheless, the majority holds that § 3582 and the compassionate release process afford district courts the discretion to relieve defendants, like Black, of legally imposed § 924(c) sentences based on the disparity created by the First Step Act.[3]

Undoubtedly, the First Step Act's reforms create sentencing disparities between defendants like Black who were sentenced under the old § 924(c) mandatory minimums and defendants sentenced under the new § 924(c) mandatory minimums. But "applying new penalties to defendants not yet sentenced, while withholding that change from defendants

---

[2] Black's argument before the district court, in full, was as follows: "The lengthy 40-year sentence he is serving rests on two convictions under 18 U.S.C. § 924(c), one for five years and another for 25 years, both consecutive to each other and consecutive to the 10-year sentence he received on the other counts. After the amendment of section 924(c), found in another section of the First Step Act, the firearms convictions, if he were sentenced today, would yield as little as 10 consecutive years, not 30 consecutive years. His current sentence does not represent a judgment that he is a dangerous person; it merely reflects a mandatory disposition, a harsh result that Congress realizes was excessive." R. 720 at 12.

[3] The majority's holding is not limited to defendants who first show an extraordinary and compelling reason for a sentence reduction and then ask the district court to consider the non-retroactive First Step Act amendments to § 924(c) in balancing the § 3553(a) factors to determine whether a sentence reduction is warranted. *See United States v. Jarvis*, — F.3d —, 2021 WL 2253235, at *3 (6th Cir. June 3, 2021).

already sentenced" has been described by the Supreme Court as "ordinary practice." *United States v. Owens*, 996 F.3d 755, 764–65 (6th Cir. 2021) (Thapar, J., dissenting) (alteration omitted) (quoting *Dorsey v. United States*, 567 U.S. 260, 280 (2012)). This ordinary practice—that naturally results in creating sentencing disparities—"cannot also be an extraordinary and compelling reason" for a sentence reduction. *Id.* at 765 (quotation omitted). In my view, "[a] sentencing disparity resulting from the First Step Act's reforms is not—as a matter of law—an extraordinary and compelling reason for a reduction in sentence." *Id.* at 764 (citing *United States v. Tomes*, 990 F.3d 500, 505 (6th Cir. 2021), and *United States v. Wills*, 991 F.3d 720, 724 (6th Cir. 2021)); *see also United States v. Maumau*, 993 F.3d 821, 838 (10th Cir. 2021) (Tymkovich, C.J., concurring) ("Indeed, the imposition of a sentence that was not only permissible but statutorily required at the time is neither an extraordinary nor a compelling reason to reduce that same sentence."). To allow otherwise permits district courts to use the discretion afforded by "§ 3582(c)(1)(A) as an end run around Congress's careful effort to limit the retroactivity of the First Step Act's reforms." *Tomes*, 990 F.3d at 505; *see United States v. Jarvis*, — F.3d —, 2021 WL 2253235, at *2 (6th Cir. June 3, 2021) ("If every defendant who received a longer sentence than the one he would receive today became eligible for compassionate release, the balance Congress struck would have come to naught."). But "a court does not have discretion … to circumvent a contrary statutory command." *See Owens*, 996 F.3d at 764 (Thapar, J., dissenting). Affording the district court such discretion undermines Congress's express intent that the First Step Act reforms do not apply to defendants like Black. In short, Congress has rejected Black's argument that the

sentencing disparity created by the First Step Act is an extraordinary and compelling reason for a sentence reduction.

Furthermore, the majority's holding is unnecessary in this case because the district court *did* account for Black's § 924(c) argument and rejected it.[4] The district court explicitly acknowledged the argument the majority contends it did not consider—that Black's "lengthy sentence reflects in large part a mandatory disposition that Congress now 'realizes was excessive.'" R. 730 at 2 (quoting and citing Def.'s Mot. at 12). Several aspects of the district court's analysis imply that it considered but was not swayed by Black's argument. After acknowledging Black's argument, the district court focused its analysis on the nature and circumstances of Black's *offenses*, which included § 924(c) convictions. We have upheld a similar implicit rejection of a prisoner's argument in an analogous context. *See United States v. Carter*, 830 F. App'x 783, 785 (7th Cir. 2020) (finding a district court's analysis reasonable when it "acknowledged" prisoner's prior crimes "no longer qualified as career-offender predicates" but "nevertheless exercised his discretion by treating them as serious offenses that factored into" its analysis). Moreover, the most natural inference drawn from the district court explicitly acknowledging the length of Black's sentence *after* acknowledging Black's § 924(c) argument is that the district court rejected the

---

[4] The majority assumes that because the district court did not explicitly reject Black's § 924(c) argument, it did not consider the argument. But we have never mandated that a district court must explicitly reject an argument when exercising its considerable discretion under § 3582(c)(1)(A). Doing so in this case adds a new requirement that is inconsistent with what we otherwise expect of district courts in evaluating compassionate release motions.

hypothetical sentences that Black proposed and that the majority speculates on here. Although the district court could have said more (while not required to do so under the law), it said enough to make clear its consideration and rejection of Black's § 924(c) argument.

Finally, the majority's analysis of our decision in *United States v. Gunn* portends trouble in future cases. 980 F.3d 1178 (7th Cir. 2020). Beginning with a point of agreement, *Gunn* held that § 1B1.13 of the Sentencing Guidelines is not "applicable" to a prisoner's compassionate release motion under § 3582(c)(1)(A). Accordingly, § 1B1.13 cannot "curtail" a district judge's discretion when analyzing whether a prisoner's compassionate release motion presents extraordinary and compelling circumstances. *Id.* at 1180. Even so, the "substantive aspects" of § 1B1.13 and its Application Notes still "provide a working definition" of extraordinary and compelling circumstances under § 3582(c)(1)(A) and can continue to inform the district court's discretion. *Id.*; *see United States v. Curtis*, 846 F. App'x 411, 413 (7th Cir. 2021). The majority elides this distinction. It begins by announcing that the district court was "applying" § 1B1.13's Application Note 1 to Black's compassionate release motion before summarily concluding that the district court did not "realize" it "had broader discretion." This mode of analysis risks giving district courts the wrong impression, namely that mere mention of § 1B1.13 is legal error under *Gunn*. It is not. *See, e.g., Carter*, 830 F. App'x at 784–85. District courts can be guided by § 1B1.13 when considering the evidence, so long as they do not limit themselves based on it. *See United States v. Lilly*, 846 F. App'x 417, 419 (7th Cir. 2021). Moreover, the majority does not analyze whether the district court's exercise of discretion was "constrained" or "guided by" § 1B1.13, instead shifting our focus on review

from what the district court did to what the district court *thought* (or did not think) it could do.

Because the district court accounted for each of Black's arguments, I would find that § 1B1.13 guided rather than constrained its analysis. While the district court's analysis of Black's medical condition tracks the language of § 1B1.13's Application Note 1(A), its analysis under the catchall provision was far broader than the specific circumstances identified under the Application Notes. The district court noted that neither party disputed Black's medical condition was a risk factor for COVID-19, but found that two other considerations—the conditions at Black's prison facility when the petition was filed, and the BOP's efforts to manage COVID-19 response in prisons—weighed against finding extraordinary and compelling circumstances in Black's case. Those two considerations are nowhere found in § 1B1.13 or its Application Notes. *Cf. Carter*, 830 F. App'x at 785 (holding district court did not abuse its discretion when it "adequately addressed U.S.S.G. § 1B1.13, acknowledging [prisoner's] significant medical conditions" but finding those offset by a number of other factors including prisoner' age, prison's success "controlling the COVID-19 outbreak," and that prisoner's wife was cared for).

I respectfully dissent.